UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP R. TILLIE,

      Civil Action No. 23-10975

    Plaintiff,

      Nancy G. Edmunds
v.      United States District Judge

JORDAN BIDDINGER and    David R. Grand
TERRY STEVENSON,     United States Magistrate Judge

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT BIDDINGER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16)

On April 26, 2023, *pro se* plaintiff Phillip Tillie ("Tillie"), an incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Jordan Biddinger ("Biddinger") and Terry Stevenson ("Stevenson") (collectively "Defendants").[1] (ECF No. 1). Now pending before the Court is a Motion for Summary Judgment on the Basis of Exhaustion, which was filed by Biddinger on December 8, 2023. (ECF No. 16). Tillie filed a response on January 17, 2024 (ECF No. 21), and no reply was filed.

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

---

[1] On December 11, 2023, an Order of Reference was entered, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 18).

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Biddinger's Motion for Summary Judgment **(ECF No. 16)** be **DENIED**.

**II.    REPORT**

    **A.     Background**

Tillie is a State of Michigan prisoner, who is currently confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. He brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Eighth Amendment rights.[2] (ECF No. 1). At the time of the events at issue in his complaint, Tillie was housed at the St. Louis Correctional Facility, where Defendants were employed. Because only Biddinger filed the instant motion, the Court will focus primarily on Tillie's allegations against him.

In his complaint, Tillie alleges that, on January 28, 2023, while attending a religious service, he began having trouble breathing due to his chronic asthma. (*Id.*, PageID.7). He alleges that he attempted to leave the service to get his fast-acting inhaler. (*Id.*). Tillie claims, however, that Biddinger would not allow him to simply leave the service to retrieve his inhaler. (*Id.*). Instead, Biddinger apparently insisted that Tillie "sign off (which would remove [Tillie] from [his] religious callout)[.]" (*Id.*). When Tillie refused to do so, Biddinger allegedly "stated 'I'll just sign you off[.]'" (*Id.*). Tillie alleges that he then

---

[2] On May 2, 2023, the Honorable Nancy G. Edmunds issued an Opinion and Order of Partial Dismissal, in which she dismissed Tillie's Fourteenth Amendment due process claim, as well as his claims for monetary damages against Defendants in their official capacities, pursuant to 28 U.S.C. § 1915(e). (ECF No. 6).

threatened to grieve Biddinger's "conduct and violation of policy and procedure," at which point Biddinger said he would "teach[] [Tillie] a lesson about filing grievances." (*Id.*). Allegedly, Biddinger then proceeded to file a false misconduct report against Tillie in retaliation for Tillie's threat to file a grievance. (*Id.*). After a February 1, 2023, hearing, Tillie was found guilty of the misconduct and sentenced to 30-days loss of privileges. (*Id.*).

Tillie thus alleges that Biddinger retaliated against him for threatening to file a grievance by issuing him a false misconduct, in violation of the First and/or Eighth Amendment. Biddinger now moves for summary judgment on Tillie's claims against him, arguing that Tillie failed to properly exhaust his administrative remedies. (ECF No. 16). For the reasons set forth below, the Court disagrees.

B.   **Standard of Review**

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that

3

demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C. Analysis

#### 1. The PLRA's Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," with respect to prison conditions until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.

4

Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits[.]" *Id.* at 524. Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system's requirements regarding the allegations made in his complaint.

An untimely or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). *See Northington v. Abdellatif*, No. 16-12931, 2019 WL 9406499, at *7 (E.D. Mich. Aug. 16, 2019) ("The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules."). Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction…. For example, a

5

> prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

### 2. The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 16-2). A state prisoner must first complete the process outlined in the Policy – including, where applicable, pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C).

The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved within two days after becoming aware of the grievable issue, he has five business days to file a Step I grievance. (*Id*. at ¶ Q). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the

6

Policy. (*Id.* at ¶ Y). If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id.*). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II grievance coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶ DD). After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy; if so, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. (*Id.* at ¶ EE). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.

However, the Policy provides that certain types of claims must be exhausted through means other than this three-step grievance process. (*Id.*, at ¶ J). For example, the Policy provides that challenges to "a decision made in a Class II or Class III misconduct hearing, including … issues directly related to the hearing process (e.g., sufficiency of witness statements …)" are not grievable, and that to be properly exhausted, any challenge to such matters must be raised at the hearing and appealed through the "appeal process [] pursuant to PD 03.03.105 'Prisoner Discipline.'" (*Id.*, ¶ J(11)).

### 3. *A Genuine Issue of Material Fact Exists as to Whether Tillie Failed to Exhaust His Claims Against Biddinger*

In his motion, Biddinger argues that Tillie did not properly exhaust his claims

against him because he did not file any grievances – let alone pursue such grievances to Step III – related to Biddinger's alleged retaliatory actions. (ECF No. 16, PageID.71-72). In support of this argument, Biddinger attaches to his motion a copy of Tillie's "MDOC Prisoner Step III Grievance Report," and its underlying grievance-related documents, which show that, after Biddinger's alleged actions on January 28, 2023, Tillie pursued only one grievance to Step III, which was wholly unrelated to the events at issue in this lawsuit. (ECF No. 16-3, PageID.98-99, 116).

In his response to Biddinger's motion, Tillie concedes that he did not file a grievance regarding Biddinger's issuance of the allegedly false misconduct ticket; he asserts, however, that the three-step grievance procedure set forth above was not the proper procedure by which to exhaust his administrative remedies in this case. (ECF No. 21, PageID.156). Relying on ¶ J(11) of the Policy, Tillie argues that prisoners are not allowed to grieve Class II misconducts, such as the one he was issued in this case; rather, they must exhaust claims arising out of the issuance of misconduct tickets through the hearing and appeals process. (*Id.*).

It appears Biddinger agrees with this principle, as he indicates in his motion that:

> Regarding prison misconduct tickets, the district courts in Michigan have recognized that decisions made in the prison hearings division are non-grievable. Instead, a plaintiff shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order. The prisoner must make the rehearing request within thirty days after the final decision or order is issued.

(ECF No. 16, PageID.79) (internal quotation marks and citations omitted). Citing *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011), however, Biddinger then asserts that

8

"when a prisoner claims that a prison official issued him a misconduct ticket for a retaliatory purpose, the prisoner must raise that claim *during the first misconduct hearing* or the prisoner cannot use such a claim to request a rehearing[.]"[3] (ECF No. 16, PageID.80) (emphasis added). Biddinger then argues that Tillie failed to exhaust his claim under *Siggers* because he "did not allege retaliation during the February 1, 2023, misconduct ticket hearing." (*Id.*, PageID.82).

A review of the February 1, 2023 Misconduct Hearing Report indicates as follows:

> Evidence and/or prisoner statement in addition to misconduct report: The hearing was held on 2/1/2023, the prisoner is charged with not following a valid direct order given by [Biddinger].
>
> The prisoner claims he never received a copy of the misconduct, but offered no explanation for not following the valid direct order given by [Biddinger].

(ECF No. 16-4, PageID.145).

Thus, from the face of the Misconduct Hearing Report alone, it appears that Tillie failed to properly exhaust his administrative remedies because he did not allege that the misconduct issued by Biddinger was retaliatory in nature at his first misconduct hearing.

---

[3] This principle has been adhered to repeatedly by courts in this District. *See Parker v. Turner*, No. 20-12794, 2022 WL 722192, at *3-4 (E.D. Mich. Mar. 9, 2022) ("Allegations that the misconduct ticket was issued in retaliation against the prisoner must be raised at the misconduct hearing…. If the inmate does not say at the hearing that the issuance of the ticket was retaliatory, any avenue to challenge the misconduct ticket is foreclosed and the inmate has failed to exhaust administrative remedies."); *Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017) (where the prisoner plaintiff "did not allege retaliation at his misconduct hearing and, additionally, he did not appeal the finding of guilt following that hearing[,]" he failed to exhaust his retaliation claim); *Miller v. Klee*, No. 17-11006, 2018 WL 1354473, at *5 (E.D. Mich. Feb. 3, 2018) ("a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies").

In response to Biddinger's motion for summary judgment, however, Tillie asserts that the MDOC's "Hearings Handbook/Operating Procedure allows for a[n] inmate to present a verbal or hand-written statement of the facts as the inmate's evidence during the hearing." (ECF No. 21, PageID.156). He further asserts – both in his response brief and in an accompanying affidavit – that he attempted to present a handwritten statement at the February 1, 2023 hearing, but Stevenson – who was conducting the hearing – refused to accept it, in violation of MDOC policy and/or procedure.[4] (*Id.*, PageID.157, 163). Tillie further asserts that Stevenson then "falsified the hearing report by stating that Plaintiff Tillie made a verbal statement, which never occurred, thereby making available administrative remedies unavailable." (*Id.*, PageID.157).[5] Biddinger did not file a reply brief or otherwise respond to Tillie's argument.

The United States Supreme Court has made clear that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632,

---

[4] Tillie attached what purports to be a copy of this handwritten statement to his response brief. (ECF No. 21, PageID.162). In it, Tillie specifically stated that, on the day in question, he explained to Biddinger that he was having trouble breathing and needed his inhaler, and that Biddinger "showed no concern but instead made threats to teach me a lesson for filing grievances." (*Id.*). He clearly asserts: "The misconduct was wrote [sic] out of retaliation due to my priviously [sic] filed grievances … [and] violated my First Amendment Right." (*Id.*).

[5] Long before advancing this argument in response to Biddinger's motion for summary judgment, Tillie raised the issue of Stevenson's alleged refusal to accept his handwritten statement at the misconduct hearing. Specifically, when Tillie appealed the guilty finding on the underlying misconduct, he asserted that, "Lt. Stevenson also falsified the hearing report due to the fact I never gave him a verbal, but instead provided a handwritten prisoner statement which I watched him toss and refused to take it, which is a violation of Administrative Rule and PD 03.03.105." (ECF No. 21, PageID.160).

642 (2016). The *Ross* court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) where an administrative procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

In this case, viewing the evidence in the light most favorable to Tillie, which the Court must do at the summary judgment stage, Biddinger has not met his burden of proving that Tillie failed to exhaust his claims against him arising out of the issuance of the January 28, 2023 misconduct ticket.[6] Tillie has come forward with evidence, which Biddinger has not refuted, that, at the February 1, 2023 misconduct hearing, Tillie attempted to submit a handwritten statement (a copy of which was provided to the Court) in which he alleged that the misconduct ticket issued by Biddinger was retaliatory in nature. (ECF No. 21, PageID.162-63). Thus, there remains at least a genuine issue of material fact as to whether Tillie was effectively thwarted from raising this issue at his first misconduct hearing, such that he had no available administrative remedies. *See Ross*, 578 U.S. at 643-44; *see also Bennett v. Winn*, No. 17-12249, 2018 WL 4784669, at * (E.D. Mich. June 6, 2018)

---

[6] As set forth above, failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *See Jones*, 549 U.S. at 218.

(allegations that plaintiff was held in segregation, where he was not at allowed to possess legal materials – including a copy of the grievance he had begun drafting – and was twice denied a replacement form were sufficient to raise a material question of fact regarding whether MDOC officials thwarted his access to the grievance procedure). Accordingly, Biddinger's motion for summary judgment on exhaustion grounds should be denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Biddinger's Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 16)** be **DENIED**.

Dated: March 5, 2024  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 5, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
